[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff State of Connecticut has brought this action against defendant William Leherissier, the son of Sally Doran who died on April 18, 1994. Between 1988 and her death in 1994, the plaintiff made public assistance payments of $223,901.71 on behalf of Sally Doran. At the time of her death her estate consisted of a NICOR stock certificate having a value of $10,416.11. The stock certificate was in the possession of the defendant who held power of attorney for Sally Doran prior to her death.
Upon the death of Sally Doran the defendant liquidated the stock, paid for Sally Doran's funeral expenses, and forwarded the remaining proceeds to the plaintiff. The plaintiff claims that the defendant failed to forward sufficient funds to it from the sale of the stock. It claims that the defendant should have paid only $1200 for the funeral expenses, and that the state was entitled to the rest. A trial to the court was held on February 25, 1998. The court finds the following facts:
Sometime in 1988 Sally Doran was placed in a convalescent home and the plaintiff began to make public assistance payments on her behalf. The only asset which she retained in her name was the NICOR certificate of stock. She retained this stock in her own name for the specific purpose of paying for her funeral expenses. The defendant had power of attorney in regard to the stock certificate. Prior to her death Sally Doran told the defendant that upon her death he was to liquidate the stock, pay for her funeral and other expenses in connection therewith, and to remit any remaining sums to the State of Connecticut as reimbursement for the state's public assistance payments. No evidence was presented at trial as to what the value of Sally Doran's stock certificate was prior to her death. The court therefore infers that this was the reason why she told the defendant to send excess funds back to the state after paying for her funeral expenses.
Upon the death of his mother the defendant's family arranged for a funeral in accordance with her specific request, and the defendant retained Attorney Barry T. Pontolillo for the purpose of liquidating the stock in order to pay the funeral expenses and to disburse the remaining funds to the State of Connecticut. Pontolillo filed an affidavit in lieu of administration with the Meriden Probate Court (Plaintiff's Exhibit 2). Said affidavit listed the stock certificate representing 404 shares of NICOR stock with a fair market value of $9,999.00 as the only asset in CT Page 6182 Sally Doran's estate. The affidavit also listed the funeral and settlement expenses of the estate, and requested the court to order payment of those expenses. The affidavit also stated that the listed assets exceeded the listed debts and claims, and that all heirs-at-law (which in this case would be the defendant) "will be submitted if the state does not exercise its Title XIX lien."
It is undisputed that the NICOR stock was liquidated in December 1995 for the total Sum of $10,416.11. These sums were disbursed as follows:
 Funeral expenses...................$ 4,561.28 Pontolillo's Attorney's fees.......$ 646.77 State of Connecticut.............. $ 5,208.06 ------------ $10,416.11
These disbursements were all made pursuant to Sally Doran's request. The defendant himself received nothing from his mother's estate inasmuch as the State was paid all available sums after the funeral and attorney's fees were paid. It was only after these sums were received by the State that it made claims for additional sums from the defendant.
The State of Connecticut has claimed that it should have received $3,361.28 (the difference between $4,561.28, the amount paid for the funeral expenses, and $1200, the amount which should have been paid for the funeral expenses in accordance with General Statutes § 17b-84.) At trial the State decided not to contest its claim for the amount of $646.77 paid to Barry T. Pontolillo for his legal expenses in handling the estate. Thus, the State is now claiming $2,714.57 plus interest, costs, and an attorney's fee.
In its complaint the State claims that the defendant's acquisition, conversion and transfer of the stock and the proceeds therefrom were wrongful, and defendant misappropriated the funds to which the State was entitled. The court finds no evidence that the defendant converted any funds for his own purpose. In fact, the defendant received absolutely nothing from his mother's estate. During Sally Doran's life the defendant merely held the stock certificate at her request and he promised her that he would carry out her wishes upon her death.
The State claims that this matter is governed by General CT Page 6183 Statutes § 42-200 through 42-206 which concerns funeral service contracts limited to licensed firms and persons. Such contracts are revocable. The State claims that inasmuch as Sally Doran did not have a funeral service contract as defined by §42-200, General Statutes § 17b-84 limits to $1200 the amount of funeral expenses which should have been paid. The defendant, on the other hand, claims that this matter is governed by General Statutes § 42-207 which provides as follows:
 "An irrevocable funeral contract may be entered into in which the amount held in escrow may be disbursed only upon the death of the beneficiary provided such a contract shall not exceed four times the highest amount payable for the burial of public assistance recipients and that all interest accumulates to the escrow account and is also inaccessible to the beneficiary. Such irrevocable funeral contracts may be transferred from one funeral service establishment to another upon request of the beneficiary. The purchase of an irrevocable funeral contract shall not preclude an individual from purchasing other funeral contracts that are revocable."
Thus, if Sally Doran had an irrevocable funeral contract as set forth in § 42-207 the funeral expenses could be at least $4,800.
In light of Section 42-207 the defendant claims that his agreement with his mother amounted to an irrevocable contract which allowed him to pay up to $4,800 toward his mother's funeral expenses. The court finds that the defendant always thought he was obligated to comply with his mother's request and that he entered into an agreement with her that he would hold the stock in trust for that purpose.
The court further finds under the facts of this case that the plaintiff has failed to show that the defendant wrongfully converted the proceeds of the stock to his own use. At no time did he ever consider that the stock belonged to him. While it could be argued that Sally Doran could or should have arranged to purchase a funeral service contract prior to her death, the fact is that she attempted to do so. Clearly, she wanted the defendant to arrange for the payment of decedent's funeral and he felt bound by his promise to make such an arrangement.
The defendant steadfastly denies that anything above $1200 of the proceeds from the sale of the stock should be an asset of Sally Doran's estate and forwarded to the state. The defendant CT Page 6184 further points out that the defendant and his deceased mother did the best they could to establish an irrevocable contract in accordance with § 42-207, a statute which is unregulated by the State of Connecticut.
The court finds that under the circumstances and facts of this case, it would be highly inequitable to penalize the defendant who did nothing more than carry out his mother's wishes and who received absolutely nothing from her estate.
Accordingly, judgment may enter for the defendant.
Allen, JTR.